FILED
At 10 O'Clock 9 M

REC 13 2019

LYNN STILLWELL
PHILLIPS COUNTY CIRCUIT CLERK
By _____ D.C.

FILED
DEC 10 2019
JEAN BURKETT CIRCUIT CLERK
WOODRUFF COUNTY, AR.
AT _____ M

# IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
## CIVIL DIVISION

**JAK APPLICATION, LLC**

PLAINTIFF

**vs.**    CV-2019-270

**MID-CONTINENT CASUALTY INSURANCE COMPANY, OKLAHOMA SURETY COMPANY, JERRY REEVES, MICHAEL COLEY, RUFUS COMER FARMS, A FAMILY PARTNERSHIP**

DEFENDANTS

## COMPLAINT

## JURISDICTION AND VENUE

1.    The Circuit Court of Phillips County, Arkansas has jurisdiction of this case because of the fact the Plaintiff is seeking a Declaratory Judgment action against the Defendants in this civil proceeding thereby giving this Court jurisdiction under Ark. Const Art. 7 § 11 and Ark. Code Ann. § 16-13-201.

2.    The venue for this action is in Phillips County, Arkansas pursuant to the general venue statute at Ark. Code Ann. § 16-60-101 and the Declaratory Judgment act which is located at Ark. Code Ann. § 16-111-101 through 111 and Ark. Code Ann. § 16-55-213 (Civil Justice Reform Act of 2003).

## PARTIES

3.    Plaintiff is JAK Application, LLC, and is an Arkansas limited liability company whose registered agent is Adam Ross Catlett, 527 Highway 318, Marvell, Arkansas, with its principle place of business located in Marvell,

Phillips County, Arkansas.

4.     Mid-Continent Casualty Company is an insurance company located at 1437 South Boulder Avenue, Suite 200, Tulsa, Oklahoma 74119.

5.     Oklahoma Surety Company is an insurance company authorized to conduct business in Arkansas and is located at 1437 South Boulder Avenue, Suite 200, Tulsa, Oklahoma 74119.

6.     Jerry Reeves is a resident of Woodruff County, Arkansas and is a Defendant in a suit brought by Michael Coley, individually, and Rufus Comer Farms, a family partnership, in Woodruff County, Arkansas in a Complaint filed December 28, 2018, and registered as case no. 74-CV-18-124.

7.     Michael Coley is a resident of Woodruff County, Arkansas and is one of the Plaintiffs in the lawsuit filed in Woodruff County, Arkansas against JAK Application, LLC and Jerry Reeves, individually, 74-CV-18-124.

8.     Rufus Comer Farms, a family partnership, is a Plaintiff in the Woodruff County suit brought against JAK Application, LLC and Jerry Reeves, individually and is the owner of real estate located in Woodruff County, Arkansas on which the subject crop was located which is the subject of the lawsuit brought in Woodruff County, 74-CV-18-124.

## FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO COUNT I

9.   This is a Declaratory Judgment action alleging that Mid-Continent Casualty (hereinafter Mid-Continent) and Oklahoma Surety Company (OSC) have a duty to defend and to pay indemnity benefits under an insurance policy issued by these two companies in favor of Plaintiff.

10.   Attached hereto is a copy of the Complaint filed in Woodruff County, Arkansas on December 28, 2018, and assigned case no. 74-CV-18-124.

11.   Attached hereto is the Answer filed by Jerry Reeves on February 25, 2019 in the Woodruff County suit by Andy Turner on behalf of Jerry Reeves.

12.   Attached hereto is a copy of the Answer of separate Defendant JAK Application, LLC filed March 30, 2019 by Louis Etoch on behalf of JAK Application, LLC.

13.   Attached hereto is Derek Winsworth, a claims representative, or behalf of Mid-Continent and Casualty and Oklahoma Surety Company, dated March 13, 2019, which, in effect, declines coverage under these circumstances.

14. Attached hereto is Louis Etoch's letter of June 13, 2019 to MidContinent Casualty, Attention: Derek Winsworth, which describes the factual basis for the claim of the Plaintiff as to coverage by the two insurance company Defendants in this case in this Declaratory Judgment action.

15. Attached hereto is Alycia Stevens', claims supervisor, letter to Louis Etoch, dated August 16, 2019, which acknowledges receipt on behalf of Oklahoma Surety Company and Mid-Continent Casualty, asserting the position that there is no coverage under the policy issued by the Defendants to the Plaintiff under these circumstances.

16. Plaintiff disagrees with the position of Mid-Continent Casualty Company and Oklahoma Surety Company and asserts that there is a duty to defend and a duty to pay indemnity benefits under these circumstances.

17. Plaintiff contends Jerry Reeves, Michael Coley and Rufus Comer Farms, a family partnership, as necessary parties to this Declaratory Judgment action because they are involved in the underlying litigation in Woodruff County, Arkansas.

## COUNT I

18. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in paragraphs nos. 1 through 17, inclusive, of the Complaint as a part of this Count.

19. Plaintiff asks for a Declaratory Judgment that there is a duty to defend and a duty to pay indemnity benefits under this policy by Mid-Continent Casualty and Oklahoma Surety Company.

20. Plaintiff contends there was a breach of contract by the two insurance company Defendants and, therefore, the Defendants are responsible for and liable for attorneys' fees in this case.

## RELIEF REQUESTED

21. Plaintiff asks for a Declaratory Judgment that the Defendant insurance companies have a duty to defend and a duty to pay indemnity benefits under the policy and for all other relief to which the Plaintiff may be entitled.

## JURY DEMAND

22. Plaintiff, pursuant to Rule 38 of the Arkansas Rules of Civil Procedure, demands a jury trial on all factual issues.

JAK APPLICATION, LLC,      PLAINTIFF

By: _____

DAVID A. HODGES

Attorney at Law
Centre Place
212 Center Street, Fifth Floor
Little Rock, Arkansas 72201-2429
Arkansas Bar No. 65021
Telephone: (501) 374-2400
Facsimile: (501) 374-8926
E-Mail:     david@hodgeslaw.com

And

LOUIS ETOCH
Attorney at Law
727 Cherry Street
Helena, AR 72342
Telephone: 870-338-3591
Facsimile: 870-338-7201
E-Mail: louis@etochlaw.com

#3792

**FILED**

DEC 2 8 2018

JEAN BURKETT-CIRCUIT CLERK
WOODRUFF COUNTY, AR
AT _____ 13.52?? _____ M

PLACE FILE MARK HERE

ALEXANDER LAW FIRM
DANIEL C. BROCK, ABN 2009160
1500 W. MAIN ST.
JACKSONVILLE, AR 72076
T: (501) 982-0525
E: dcbrocklaw@gmail.com
*Attorney for Plaintiffs*

## IN THE CIRCUIT COURT OF WOODRUFF COUNTY, ARKANSAS
### _____ DIVISION—CIVIL

MICHAEL COLEY, INDIVIDUALLY,
AND RUFUS COMER FARMS, A
FAMILY PARTNERSHIP

      Plaintiffs,

VS.

JAK APPLICATION, LLC, AND
JERRY REEVES, INDIVIDUALLY

      Defendants.

Case No. 74CV-18-124

## COMPLAINT

The Plaintiffs, Michael Coley (hereinafter "Coley") and Rufus Comer Farms, a family partnership (hereinafter "Comer Farms"), for their Complaint, state:

### Introduction

1.    This negligence lawsuit arises from an incident that occurred in June 2017 in Woodruff County, Arkansas, when the Defendants caused severe damage to the Plaintiffs' soybean crop as a result of the Defendants applying a pesticide containing Dicamba to a nearby field.

2.    The Defendants' manner of applying the Dicamba-based pesticide was unsafe, reckless, and wholly without regard for the mandatory application rules established by the Arkansas State Plant Board and out of compliance with the rules set forth by the manufacturer of the Dicamba-based pesticide product.

RECEIVED

FEB 1 1 2019

WOODRUFF CO. SHERIFF'S OFFICE
WOODRUFF COUNTY, AR

3.    The Plaintiffs bring this action as a result of the Defendants' direct, affirmative, and non-delegable negligent acts under Arkansas common law tort theories to recover monetary damages.

## Parties

4.    Coley is a resident of Woodruff County, Arkansas.

5.    Comer Farms is the owner of the real property located in Woodruff County, Arkansas, on which the subject crop was located.

6.    Separate Defendant, Jerry Reeves, is a resident of Woodruff County, Arkansas.

7.    Separate Defendant, JAK Application, LLC, is an Arkansas limited liability company whose registered agent is Adam Ross Catlett located at 527 Highway 318, Marvell, Arkansas, with its principal place of business located in Marvell, Arkansas.

## Jurisdiction and Venue

8.    This Court has subject matter jurisdiction under Ark. Code Ann. § 16-13-201(a) which establishes original jurisdiction in the circuit courts for all actions and proceedings concerning the redress of civil grievances except where exclusive jurisdiction is given to other courts pursuant to the Arkansas Constitution. The Defendants reside or maintain their principal place of business in the State of Arkansas, committed tortious acts and omissions in Arkansas, and will be served in Arkansas. Therefore, due process is not offended by the assertion of personal jurisdiction over the Defendants.

9.    Venue is proper in Woodruff County, Arkansas, under Ark. Code Ann. § 16-60-101.

## Factual Allegations

10.    Coley entered into a farming lease with Comer Farms to plant soybeans on the subject real property for the 2017 farming year.

11.    The subject real property is comprised of approximately 600 acres largely located in Section 12, Township 6 North, Range 2 West, Woodruff County, Arkansas (hereinafter, the "Damaged Field").

RECEIVED
FEB 11 2019
WOODRUFF CO. SHERIFFS OFFICE
WOODRUFF COUNTY, AR

12.    The rent owed by Coley to Comer Farms is based on the crop yield harvested.

13.    The Separate Defendant. Jerry Reeves, owns and/or farms various tracts of real property lying adjacent to the Damaged Field to the West and the North.

14.    Coley planted a common Dicamba-sensitive variety of soybeans in the Damaged Field in 2017, which is the predominant variety of soybeans in Woodruff County, as well as in Arkansas, generally.

15.    The Defendants knew or reasonably should have known that the soybeans planted in the Damaged Field were not of the specialty Dicamba-tolerant variety.

16.    The Separate Defendant, Jerry Reeves, planted a specialty Dicamba-tolerant variety of soybeans in 2017 in various fields lying adjacent to the Damaged Field to the West and the North.

17.    The Separate Defendant, Jerry Reeves, planted a specialty Dicamba-tolerant variety of soybeans in the year or years prior to 2017 in various fields lying adjacent to the Damaged Field.

18.    During the time in which the events giving rise to this action occurred, the Defendants were licensed with the Arkansas State Plant Board to apply pesticide chemicals in a commercial manner.

19.    During the time in which the events giving rise to this action occurred, the Defendants were further certified and had completed the requisite education course(s) with the Arkansas State Plant Board necessary to apply Dicamba-based pesticides.

20.    In June 2017, the Separate Defendant, Jerry Reeves, hired the Separate Defendant, JAK Application, LLC, to apply the Dicamba-based pesticide known as Engenia to various fields lying adjacent to the Damaged Field.

21.    In June 2017, the Separate Defendant, Jerry Reeves, also personally applied Engenia to his various fields lying adjacent to the Damaged Field.

22.    While the 2017 Arkansas State Plant Board regulations prohibited applicators from applying any Dicamba-based pesticide within 100 feet of any soybean crop which is not Dicamba-tolerant, the Defendants negligently and

FEB 1 1 2019

WOODRUFF CO. SHERIFF'S OFFICE
WOODRUFF COUNTY, AR

3

recklessly disregarded the buffer requirement and, instead, applied Engenia within 100 feet to the Damaged Field planted in Dicamba-sensitive soybeans.

23.     While Ark. Code Ann. § 20-20-227 makes it unlawful for applicators to apply pesticides in a manner inconsistent with the product label instructions and restrictions, the Defendants negligently and recklessly disregarded the product label instructions and restrictions for Engenia in the manner by which they applied it to the various fields lying adjacent to the Damaged Field.

24.     The Defendants knew or reasonably should have known that their use of Engenia was non-compliant with both the regulations established by the Arkansas State Plant Board and the instructions and restrictions contained in the labeling of the product.

25.     The Defendants knew or reasonably should have known that the regulations established by the Arkansas State Plant Board and the instructions and restrictions contained in the labeling of Engenia regarding the use of the product were for the protection of surrounding Dicamba-sensitive crops.

26.     The Defendants had an affirmative responsibility to use Engenia with extreme care and in strict compliance with all regulations and restrictions established specifically due to the well-known severe adverse effects the Dicamba-based product has on Dicamba-sensitive crops predominantly used by farmers across the nation.

27.     The Defendants' careless and reckless use of Engenia proximately caused severe damage to the soybeans planted by Coley in the Damaged Field.

28.     The Plaintiffs bring this negligence lawsuit to recover monetary damages for the severe damages to the crops planted in the Damaged Field directly and proximately caused by the Defendants in excess of the amount required for federal diversity jurisdiction.

**Cause of Action I**
**Direct Negligence**

29.     The Plaintiffs re-allege the previous paragraphs and incorporate them by reference herein as though stated word-for-word.

30.     The Defendants have a direct and affirmative non-delegable duty to use the Dicamba-based pesticide in compliance with Arkansas State Plant Board

FEB — 1 2019

4

regulations and labeling instructions of the product for the protection of surrounding Dicamba-sensitive crops.

31.    The Defendants directly and affirmatively, through their own direct negligence, created an appreciable risk of damage to surrounding crops by failing to comply with the safety measures in place to protect the majority of farmers using more common Dicamba-sensitive crops, including the Plaintiffs, from foreseeable harm.

32.    The Defendants have a duty to protect surrounding Dicamba-sensitive crops from damage that they know or those that, with prudence and reasonable care, they might discover resulting from the use of Dicamba-based pesticides.

33.    The Defendants knew or reasonably should have known in the exercise of prudence and reasonable care, that their chosen manner of use of Engenia could be unsafe, unreasonably dangerous, and cause severe harm and damages to foreseeable users of more common Dicamba-sensitive varieties of soybeans and other crops in the immediate vicinity, such as the Plaintiffs.

34.    The Defendants directly and affirmatively created through their acts and omissions a hazardous, unsafe, and dangerous condition that caused harm and damage to the Plaintiffs' adjacent crops.

35.    The Defendants knew or should have known that they needed to comply with regulations established by the Arkansas State Plant Board and the labeling on the Dicamba-based product in order to protect users of more common Dicamba-sensitive crops in the vicinity of the Defendants' use of Engenia.

36.    The Defendants knew or should have known that without preventative measures in place, the Defendants would create an unreasonably harmful condition that could result in an appreciable risk of harm and damage to surrounding crops of other farmers.

37.    The Defendants failed to properly supervise and properly instruct and train their managers, supervisors, employees, representatives, servants, and agents to properly and lawfully apply the Dicamba-based pesticide so as to prevent foreseeable harm and risk of serious harm and damage to foreseeable users of more common Dicamba-sensitive crops.

38.    The Defendants failed to comply with the established regulations and instructions relating to the use and application of Engenia put in place to prevent

5

foreseeable harm and risk of serious damage to other foreseeable users of Dicamba-sensitive crops and further failed to otherwise have an adequate safety plan, procedure, and policy in place to prevent said foreseeable harm and damages.

39. The Defendants were directly and affirmatively negligent and breached their direct and non-delegable duties owed to the Plaintiffs to appropriately and lawfully use and apply the Dicamba-based pesticide.

40. As a direct and proximate result of the Defendants' breach of duties owed to the Plaintiffs, the Plaintiffs experienced serious and severe damages to their crops for which they now seek compensation in a sum in excess of the amount required for federal diversity jurisdiction.

## Cause of Action II
## Vicarious Liability

41. The Plaintiffs re-allege the previous paragraphs and incorporate them by reference herein as though stated word-for-word.

42. At all times relevant to this cause of action, the Defendants' managers, supervisors, employees, representatives, servants, and agents were working and acting within the scope of their employment and for the financial benefit of the Defendants.

43. The Defendants, by operation of law, are vicariously liable for the negligent acts, omissions, and conduct of their managers, supervisors, employees, representatives, servants, and agents acting within the course and scope of employment, proximately causing and resulting in serious damages to the Plaintiffs.

44. As a direct and proximate result of the Defendants' duties owed to the Plaintiffs, the Plaintiffs experienced serious damages for which they now seek compensation in a sum in excess of the amount required for federal diversity jurisdiction.

## Proximate Causation

45. The Plaintiffs re-allege the previous paragraphs and incorporate them by reference herein as though stated word-for-word.

46. The Plaintiffs' damages were a probable and natural foreseeable consequence of the Defendants' negligent acts and/or omissions.

RECEIVED
FEB 1 1 2019

6

47.   The Plaintiffs' damages were therefore directly and proximately caused by the above-articulated negligent acts and/or omissions.

## Damages

48.   The Plaintiffs are entitled to any earnings, profits. commissions, and business opportunities lost as a proximate cause and result of the Defendants' negligent acts and omissions.

49.   The Plaintiffs are further entitled to any other damages available to the Plaintiffs whether compensatory, actual, special, consequential, or other, for the damages they incurred as a proximate cause and result of the negligence and tortious conduct alleged herein.

## Punitive Damages

50.   The Plaintiffs seek punitive damages or exemplar damages, if appropriate from the facts. to deter the Defendants and others from similar conduct. The Defendants knew, or should have known in the light of the surrounding circumstances. that their conduct would naturally and probably result in injury and damages to others. The Defendants continued such conduct with malice or reckless disregard and conscious indifference to the consequences of their actions or inactions from which malice may be inferred or pursued a course of conduct that caused severe damages and was consciously indifferent to the rights of the Plaintiffs.

## Demand for Jury Trial

51.   Plaintiffs hereby demand a jury trial of twelve jurors for all issues of fact in this matter.

WHEREFORE, the Plaintiffs pray this Court enters judgment against the Defendants, jointly and severally, as permitted by law for a sum of compensatory, actual, special. and consequential damages in excess of the amount required for federal diversity jurisdiction and sufficient to fully compensate them for their injuries and losses and to make them whole; for pre-judgment and post-judgment interest at the maximum rate allowed by law; for reasonable expenses, costs, and attorney's fees as provided by law and as incurred by the Plaintiffs for recovering any judgment; for punitive damages, if warranted; and for all other relief deemed equitable, appropriate, and just.

RECEIVED
FEB 11 2019
WOODRUFF COUNTY, AR

Respectfully submitted,

ALEXANDER LAW FIRM

By: _____

Daniel C. Brock, ABN 2009160
1500 W. Main St.
Jacksonville, AR 72076
T: (501) 982-0525
F: (501) 982-0000
E: dcbrocklaw@gmail.com
*Counsel for Plaintiffs*

RECEIVED
FEB 11 2019

8

Feb. 25. 2019   2:05PM

No. 0153   P. 2

**FILED**

FEB 2 5 2019

JEAN BURKETT-CIRCUIT CLERK
WOODRUFF COUNTY, AR

AT _____

IN THE CIRCUIT COURT OF WOODRUFF COUNTY, ARKANSAS
CIVIL DIVISION

MICHAEL COLEY, Individually                                    **PLAINTIFFS**
and RUFUS COMER FARMS,
a Family Partnership

CASE NO: 74CV-18-124

VS.                                                                          **DEFENDANTS**

JAK APPLICATIONS, LLC and
JERE REEVES, Individually

<u>ANSWER</u>

Comes now the Separate Defendant, Jere Reeves, by and through his attorneys,
Turner Law Firm, P.A., and for his Answer to the Complaint of the Plaintiffs, herein
states:

1.      Separate Defendant generally and specifically denies each and every
allegation contained in Paragraph No. 1 of Plaintiffs' Complaint.

2.      Separate Defendant generally and specifically denies each and every
allegation contained in Paragraph No. 2 of Plaintiffs' Complaint.

3.      Separate Defendant generally and specifically denies each and every
allegation contained in Paragraph No. 3 of Plaintiffs' Complaint.

4.      Separate Defendant is without sufficient information to admit or deny the
allegations contained in Paragraph No. 4 of Plaintiffs' Complaint and, therefore,
generally and specifically denies each and every allegation contained therein.

5.      Separate Defendant is without sufficient information to admit or deny the
allegations contained in Paragraph No. 5 of Plaintiffs' Complaint and, therefore,
generally and specifically denies each and every allegation contained therein.

-1-

6.      Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 6 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

7.      Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 7 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

8.      Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 8 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

9.      Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 9 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

10.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 10 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

11.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 11 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

12.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 12 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

13.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 13 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

14.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 14 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

15.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 15 of Plaintiffs' Complaint.

16.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 16 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

17.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 17 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

18.     Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 18 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

19.     Separate Defendant admits the allegations contained in Paragraph No. 19 of Plaintiffs' Complaint.

20.     Separate Defendant admits the allegations contained in Paragraph No. 20 of Plaintiffs' Complaint.

32.   Separate Defendant is without sufficient information to admit or deny the allegations contained in Paragraph No. 32 of Plaintiffs' Complaint and, therefore, generally and specifically denies each and every allegation contained therein.

33.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 33 of Plaintiffs' Complaint.

34.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 34 of Plaintiffs' Complaint.

35.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 35 of Plaintiffs' Complaint.

36.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 36 of Plaintiffs' Complaint.

37.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 37 of Plaintiffs' Complaint.

38.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 38 of Plaintiffs' Complaint.

39.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 39 of Plaintiffs' Complaint.

40.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 40 of Plaintiffs' Complaint.

41.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 41 of Plaintiffs' Complaint.

42.   Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 42 of Plaintiffs' Complaint.

43.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 43 of Plaintiffs' Complaint.

44.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 44 of Plaintiffs' Complaint.

45.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 45 of Plaintiffs' Complaint.

46.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 46 of Plaintiffs' Complaint.

47.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 47 of Plaintiffs' Complaint.

48.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 48 of Plaintiffs' Complaint.

49.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 49 of Plaintiffs' Complaint.

50.     Separate Defendant generally and specifically denies each and every allegation contained in Paragraph No. 50 of Plaintiffs' Complaint.

51.     Separate Defendant joins in Plaintiffs' request for a trial by jury as stated in Paragraph No. 51 of Plaintiffs' Complaint.

52.     Separate Defendants state that any allegation contained in Plaintiffs' Complaint and not specifically admitted herein is deemed denied.

53.     Separate Defendant reserves the right to amend his Answer and plead further.

54.    Pleading affirmatively, Separate Defendant pleads and claims any and all benefits, as applicable, derived from Act 649 of the Acts of Arkansas, which became effective March 25, 2003.

55.    Pleading affirmatively, Separate Defendant pleads any and all defenses which may be applicable for Ark. R. Civ. P. Rule 8(c), including, but not limited to, comparative fault, estoppel, laches, payment, release, statute of limitations, and waiver.

56.    Pleading affirmatively, Separate Defendant states that Plaintiffs' Complaint fails to state a cause of action upon which relief may be granted and should be dismissed in accordance with Rule 12(b)(6) of the Arkansas Rules of Civil Procedure.

57.    Pleading affirmatively, Separate Defendant states that Separate Defendant, JAK Application, LLC, is an independent contractor and, therefore, its actions are not imputed to this Separate Defendant.

58.    Pleading affirmatively, Separate Defendant states that any nuisance claim is barred by the Arkansas Right to Farm Statute, Ark. Code Ann. §2-4-107 because the farming operation was established and employs methods commonly associated with agricultural production.

59.    Pleading affirmatively, Separate Defendant states that any damages sustained by Plaintiffs was a result of the negligence of Separate Defendant, JAK Application, LLC, and therefore should act as a bar or diminution to any recovery from this Separate Defendant.

59.   Separate Defendant states that Plaintiffs' Complaint fails to set forth facts sufficient to form a cause of action for which punitive damages might be awarded. Pleading further, and in the affirmative, defendant states:

a) An award of punitive damages upon these facts and in this procedural manner violates the 'due process' clause of the United States Constitution; and

b) If it is determined that punitive damages should be considered, any evidence concerning such an award, and any determination regarding such an award, should be made in a bifurcated trial.

WHEREFORE, Separate Defendant, Jere Reeves, prays that the Complaint of the Plaintiffs be dismissed for his costs herein expended, and all other just and proper relief.

Respectfully submitted,

TURNER LAW FIRM, P.A.
P.O. BOX 1225
CABOT, ARKANSAS 72023-1225
(501) 941-2210


BY: _____
ANDY L. TURNER, BAR ID #97145
JOHN D. ATKINS, BAR ID #12204
KALEB M. JONES, BAR ID #16210

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all attorneys of record as listed below this 25th day of February, 2019.

ANDY L. TURNER

Daniel C. Brock
Alexander Law Firm
1500 W. Main Street
Jacksonville, AR  72076

MAR-20-2019 23:04 From:WOODR   COUNTY CIR  8783478783                    :98783387201481        Page:1

03/20/2019   09:50 Office                                              (FAX)                    P.003/006

## IN THE CIRCUIT COURT OF WOODRUFF COUNTY, ARKANSAS

MICHAEL COLEY, INDIVIDUALLY
AND RUFUS COMER FARMS, A
FAMILY PARTNERSHIP

**PLAINTIFFS**

*FILED*
MAR 20 2019

VS.                        NO. 74CV-18-124-1

JEAN BURKETT-CIRCUIT CLERK
WOODRUFF COUNTY, AR
AT _____ 11:40___ M

JAK APPLICATION, LLC AND
JERRY REEVES, INDIVIDUALLY

**DEFENDANTS**

### ANSWER OF SEPARATE DEFENDANT JAK APPLICATION, LLC

Comes the separate Defendant, JAK Application, LLC, (hereinafter referred to as "JAK"
or "Defendant") by and through its attorneys, the Etoch Law Firm, and for its Answer, states:

1. Defendant JAK denies all allegations of Plaintiff's Complaint not specifically
admitted herein. Defendant to the extent applicable incorporates by references the assertions,
denials, and defenses of the other Defendant in his respective answers.

2. Defendant JAK is without sufficient information to admit or deny the allegations in
paragraphs numbered four (4), five (5), six (6), nine (9), ten (10), eleven (11), twelve (12),
thirteen (13), fourteen (14), sixteen (16), seventeen (17), twenty (20), twenty-one (21), thirty-
two (32), forty-two (42) of Plaintiff's Complaint, and therefore denies same.

3. Defendant JAK denies the allegations in paragraphs numbered one (1), two (2), three
(3), fifteen (15), twenty-two (22), twenty-three (23), twenty-four (24), twenty-five (25), twenty-
six (26), twenty-seven (27), twenty-eight (28), thirty (30), thirty-one (31), thirty-three (33),
thirty-four (34), thirty-five (35), thirty-six (36), thirty-seven (37), thirty-eight (38), thirty-nine
(39), forty (40), forty-three (43), forty-four (44), forty-six (46), forty-seven (47), forty-eight (48),
forty-nine (49), and fifty (50) of Plaintiff's Complaint.

4. Defendant JAK admits the allegations in paragraphs numbered seven (7), eighteen

1

12. Plaintiff's Complaint should be dismissed because Plaintiff's Complaint fails to state facts upon which relief can be granted on their claims against the Defendants.

13. That, pleading affirmatively and while denying any fault, Defendant JAK states the Plaintiffs' Complaint should be dismissed pursuant to Ark. R. Civ. P. 12(b)(4) and (5) for insufficiency of process and insufficiency of service of process, respectively. Specifically, a person purporting to be from the Sheriff's office called and advised Defendant JAK's agent that he had been served via telephone.

14. Pleading affirmatively and while denying any fault, Separate Defendant Jerry Reeves, is a separate party and therefore his actions are not imputed to this separate Defendant.

15. Pleading affirmatively and while denying any fault, Defendant JAK states that any nuisance claim is barred by the Arkansas Right to Farm Statute, Ark. Code Ann. §2-4-107 because Defendant Reeves' farming operation was established and employs methods commonly associated with agricultural production.

16. Pleading affirmatively, Defendant JAK states that any damages sustained by Plaintiffs was a result of the negligence of separate Defendant Reeves, and therefore should act as a bar or diminution to any recovery from this separate Defendant.

17. Defendant JAK states that Plaintiffs' Complaint fails to set forth facts sufficient to form a cause of action for which punitive damages might be awarded. Pleading further, and in the affirmative, Defendant JAK states:

(a) An award of punitive damages upon these facts and in this procedural manner violates the due process clause of the United States Constitution; and

(b) If it is determined that punitive damages should be considered, any evidence concerning such an award, and any determination regarding such an award, should be made in a

bifurcated trial.

18. Defendant JAK reserves the right to amend its Answer and plead further.

WHEREFORE, PREMISES CONSIDERED, the separate Defendant, JAK Application, LLC, for the above reasons and based upon the above authority, prays that the Complaint filed herein be dismissed with prejudice; that it recovers its costs, a reasonable attorney's fee; and all other relief to which it may be entitled in these premises.

Respectfully submitted,

ETOCH LAW FIRM

By: _____

LOUIS A. ETOCH (89030)
Attorney for Plaintiff
P.O. Box 100 - 727 Cherry St.
Helena, AR  72342
(870) 338-3591

## CERTIFICATE OF SERVICE

I, the undersigned, one of the attorneys for Defendant JAK Application, state that a copy of the foregoing pleading has been mailed to the parties listed below on this _22_ day of March, 2019.

Mr. Andy Turner
Turner Law Firm
P.O. Box 1225
Cabot AR 72023-1225

Mr. Daniel Brock
Alexander Law Firm
1500 W. Main St.
Jacksonville AR 72076

4

March 13, 2019

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Jak Application, LLC
527 Hwy 318
Marvell, AR 72366

RE:   MCC Insured:              Jak Application, LLC (JAK)
      MCC Policy No:            GL 970038
      Claim No:                 1245325
      Date of Loss:             6/10/17
      Claimant:                 Michael Coley and Rufus Farms vs. JAK Applications, LLC
                                And Jerry Reeves, Individually

Dear Mr. Catlett:

Mid-Continent Casualty (MCC) will be handling this claim for Oklahoma Surety Company and acknowledges receipt of the above referenced lawsuit filed in the Circuit Court of Woodruff County, AR Civil Division. MCC will not be retaining counsel to represent JAK at this time. It is our understanding an answer, on behalf of JAK is due March 27, 2019. It will be important that you take necessary action to protect your interest in this matter. MCC will be investigating the extent of its obligation to JAK under the terms of the policy referred to in this letter. Please be advised MCC fully reserves all its rights regarding coverage in connection with this matter. Neither this correspondence nor any future communication or investigation shall be deemed as a waiver of any rights or defenses available to MCC under the terms and conditions of the policy. Please be advised this investigation is being provided subject to a reservation of rights as to coverage under the policy and MCC reserves unto itself the right of non coverage under the policy, as discussed below

The lawsuit alleges that Jerry Reeves hired JAK to apply a dicamba based pesticide known as Engenia to his various fields which caused damage to a soybean crop planted by plaintiff. It alleges that defendants were negligent in their disregard of the 100 feet buffer zone requirement stipulated in 2017 Arkansas State Plant Board regulations. Defendants applied Engenia within 100 feet of the damaged field. The defendants knew or should have known that their use of Engenia was non-compliant with both the regulations established by the AR Plant Board and restrictions contained in the labeling of the product.

MCG provides insurance to Jak under policy GL 970038 with effective dates of 2/24/17 – 2/24/18. This policy includes the Commercial General Liability Coverage form CG 0001 (4/13). While we encourage you to review the entire policy, pertinent portions of your policy are attached to this letter. Terms in quotation marks are specifically defined are also included. Please refer to page 1 of this form, which includes Coverage A insuring agreement. It provides that we will pay those sums an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence". The definition of an "occurrence" is amended by endorsement CG0142 (7/11). We are reserving our rights as to any claim that may not meet the definitions of these terms or any other terms of the policy.

The policy includes certain exclusions that could apply to the claims being made, including the following:

- Exclusion f. **Pollution** may preclude coverage for (1) "bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

Your policy contains the following endorsements:

**CG2264 (4/13) Pesticide or Herbicide Applicator – Limited Pollution Coverage** which modifies Paragraph (1)(d) of Exclusion f. of Section I – Coverage A – Bodily Injury And Property Damage Liability. This endorsement modifies exclusion f if the operations as crop sprayer meets all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government, which apply to those operations.

Your cooperation during the course of our investigation is appreciated. While an investigation is being undertaken we are not waiving our rights, nor are we obligated to provide you with a defense or coverage for any claim which may arise from this accident. We reserve the right to amend or supplement the contents of this letter based on any additional information that may be provided or later discovered. If you are aware of any information that you believe may impact the contents of this letter, please inform us.

Upon receipt of this correspondence, please contact the undersigned with any questions you may have.

Sincerely,

Derek Winsworth
Claim Representative
918-586-0820
Email: claims@mcg-ins.com

cc: Agent

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG0001 (4/13)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES
## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

---

**2. Exclusions**

This insurance does not apply to:

**f. Pollution**

  (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (i) Any insured; or

      (ii) Any person or organization for whom you may be legally responsible; or

    (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

    (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

  (2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

## SECTION V – DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Property damage" means:

**a.** · Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

---

**CG 01 42 (7/11)**

**ARKANSAS CHANGES**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Pursuant to Arkansas Code Section 23-79-155:

**A.** The definition of "occurrence" includes faulty workmanship; and     **B.**     The definition of "occurrence" required by this section of Arkansas law does not serve to limit or restrict the applicability of any exclusion for "bodily injury" or "property damage" under this Coverage Part.

---

**CG 22 64 (4/13)**

**PESTICIDE OR HERBICIDE APPLICATOR –**

**LIMITED POLLUTION COVERAGE**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

## SCHEDULE

**Description Of Operations:**
**Crop Sprayer**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the operations shown in the Schedule, Paragraph (1)(d) of Exclusion f. of Section I – Coverage A – Bodily Injury And Property Damage Liability does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

# ETOCH LAW FIRM

## ATTORNEYS AT LAW
### 727 Cherry Street-P.O. Box 100
### Helena, AR 72342

Phone: (870) 338-3591

Fax: (870) 338-7201

Louis A. Etoch
louis@etochlaw.com

Keith E. Clements
keith@etochlaw.com

John M. Landis
john@etochlaw.com

June 13, 2019

VIA EMAIL: claims@mcg-ins.com

Mid-Continent Casualty
ATTN: Derek Winsworth

RE:    MCC Insured:    JAK Application, LLC (JAK)
       MCC Policy No.    GL 970038
       Claim No.    1245325
       Date of Incident:    6-10-17
       Claimant:    Michael Coley and Rufus Farms v. JAK Applications, LLC
            and Jerry Reeves, Individually

Dear Mr. Winsworth:

Please be advised that I was retained by JAK to file an Answer to the Complaint filed in the above referenced matter after Mid-Continent Casualty (MCC) failed, refused and neglected to answer said Complaint on its behalf and refused to provide a defense to the claims asserted against your insured in said lawsuit.   See attached denial letter sent to JAK.

I have enclosed another copy of the Complaint filed against JAK in Woodruff County Circuit Court case number 74CV-18-124 by Michael Coley and Rufus Farms.   I have talked with Adam Catlett and Kurt Catlett from JAK at length regarding this matter.   I sincerely believe MCC is required provide JAK a defense to this lawsuit and further, pay any Judgment JAK might owe.

Specifically, the facts of this incident are set forth in the attached Complaint. . Mr. Coley alleges that JAK and/or Mr. Reeves sprayed Dicamba pesticide on a neighboring field from his field which caused damage to Mr. Coley's crop.   At the time of the alleged incident, JAK was insured through a general liability policy with MCC.   JAK is in the agriculture application business. Pursuant to the terms of MCC's policy of insurance, MCC is required not only to pay any judgment that may be entered against JAK, but also MCC has a duty to defend which we know is much broader than its duty to indemnify. As such, MCC must provide a defense if the allegations in the Complaint are covered by the insuring agreement.   This is true even if MCC believes the claim is covered due to an exclusion or some other policy provision.   MCC must continue to defend JAK until it can show that the claim isn't covered.   If MCC really believes that there is no duty to defend then MCC should have provided a defense and filed a declaratory judgment

action to determine MCC's obligation to JAK.

Generally, liability insurers owe three separate duties to their insureds—the duty to defend, to settle claims against the insured in good faith and to indemnify and pay coverage claims against their insureds.   *Arizona Property & Cas. Ins. Guar. Fund v. Helme,* 153 Ariz. 129, 7535 P. 2d 451 (1987).

It is generally acknowledged that the duty of defense in a commercial general liability policy is broader in scope that the duty to pay on behalf of the insured.    This basis is twofold.   First, the insurer is required to defend covered claims even if the insured is ultimately found in a trial or other civil proceeding to have no legal obligation to pay damages.   Second, the insurer's obligation to defend is determined by the allegations contained in the suit and not by facts that may later be established that ultimately show the claim is not covered by the commercial general liability policy.   The insurer's duty to defend in the commercial general liability policy and the resulting payment of legal expenses, is triggered when covered allegations are contained in a suit brought against an insured.   In summary, all suits asserting covered allegations must be defended while only a fraction of these suits actually result in the payment of damages.     See *Murphy Oil USA, Inc., v. Unigard Sec. Ins. Co.,* 347 Ark. 167, 61 S.W. 3d  807 (2001) and *Scottsdale Ins. Co. v. Morrow Land Valley Co., LLC,* 2012 Ark. 247, 411, S.W. 3d 184 (2012).

Please note that keeping in mind any doubt regarding the duty to defend should be resolved in favor of JAK, even if refusing to defend may be the best course of action for MCC.   I believe as MCC is aware, MCC's denial in this case has resulted in a material breach of contract and constitutes bad faith by MCC towards JAK.

I filed the attached Answer only so JAK would not be prejudiced in anyway.   I am requesting with this letter that MCC either retain substitute counsel for JAK as a Defendant in this lawsuit or alternatively, MCC could agree to compensate me for my time in representing JAK as a defendant in this lawsuit. MCC owes JAK a defense of this lawsuit.   If MCC continues to refuse to defend this case for JAK, I have been directed file suit on behalf of JAK against MCC promptly.

With this letter, I am specifically requesting that MCC provide to JAK Application, LLC a defense to the attached Complaint.    Your prompt reply, attention, and cooperation are appreciated.

Sincerely,

Louis A. Etoch

LAE/sr
Enclosure

cc: JAK Application

**MID-CONTINENT GROUP**

Mid-Continent Casualty I Mid-Continent Assurance I Oklahoma Surety I Mid-Continent Excess & Surplus Lines 

1437 S. Boulder Ave., Suite 200   I   Tulsa, OK 74119   I   PO Box 1409   I   Tulsa, OK 74101-1409   I   (918) 587-7221   I   Fax (918) 586-0640   I   claims@mcg-ins.com

August 16, 2019

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Etoch Law Firm
727 Cherry St.
Helena, AR 72342

| | |
|---|---|
| MCC Insured: | JAK Application, LLC (JAK) |
| MCC Policy No: | GL 970038 |
| Claim No: | 1245325 |
| Date of Loss: | 6/10/17 |
| RE: | Michael Coley and Rufus Farms vs. JAK Applications, LLC and Jerry Reeves, Individually Case No. 74CV-18-124 |

Dear Mr. Etoch:

Oklahoma Surety Company (OSC) acknowledges receipt of the above referenced lawsuit filed in the Circuit Court of Woodruff County, AR. We have completed our review and must advise you that the referenced policy does not provide coverage for the allegations being made in this suit. The reasons for this declination of coverage are discussed below. Our coverage analysis remains unchanged as outlined below.

In their suit the plaintiffs' allege that Jerry Reeves hired JAK to apply a dicamba-based pesticide known as Engenia to his fields, which caused damage to a soybean crop. It is alleged defendants were negligent in their disregard of the 100 feet buffer zone requirement stipulated in 2017 Arkansas State Plant Board regulations. They claim defendants applied Engenia within 100 feet of the damaged field, and they knew or should have known that their use of Engenia was non-compliant with both the regulations established by the AR Plant Board and restrictions contained in the labeling of the product.

In examining the coverage, we have reviewed policy GL 970038 with effective dates 2/24/17 – 2/24/18. This policy includes the Commercial General Liability Coverage form CG 0001 (04/13). The insuring agreement of this form provides that we will pay those sums an insured becomes legally obligated to pay as damages to which this insurance applies. This policy includes an exclusion that would apply to these allegations. Specifically, exclusion 2 (f.1.d.) provides this insurance does not apply to "property damage" arising out of the actual discharge, dispersal, migration, release or escape of "pollutants" from any location, if the "pollutants" are brought onto the location in connection with an insured's operations. The language of this exclusion would act to preclude coverage for the claims being made.

A review of the policy shows endorsement CG2264 (4/13) Pesticide or Herbicide Applicator - Limited Pollution Coverage has been added. This endorsement does modify exclusion 2 (f), but only if the operations as a crop sprayer meets all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government. Based on the investigation by the Plant Board and the allegations in the complaint it is clear those standards were not met, and the endorsement would not apply.

This declination of coverage comes as a result of our review of the policy, the referenced lawsuit and our investigation of the loss. By offering this explanation of our decision, OSC is not waiving any provisions of the policy and reserves the right to assert other policy conditions, endorsements or exclusions that may give rise to other disclaimers of coverage. Should an amended lawsuit be filed please forward a copy to us so that the specific allegations being made against you can be reviewed. If you have any additional information or documentation that you feel may have a bearing on our decision, please forward to us and we will be happy to review.

If you have any questions regarding this matter, please contact the undersigned or the handling adjuster, Derek Winsworth (ext. 60820). Please reference the claim number 1245325 on any correspondence.

Sincerely,

Alycia Stevens, CIC
Claims Supervisor
918-586-0809
Email: claims@mcg-ins.com


cc:       American Safeguard Insurance Inc          via:     Jdavis@asiagents.com

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG0001 (4/13)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**f. Pollution**
    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
        (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:
            (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;
            (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or
            (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";
        (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
        (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
            (i) Any insured; or
            (ii) Any person or organization for whom you may be legally responsible; or
        (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:
            (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;
            (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or
            (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".
        (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".
    (2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

## SECTION V – DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

---

CG 22 64 (4/13)

### PESTICIDE OR HERBICIDE APPLICATOR –

### LIMITED POLLUTION COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Description Of Operations:**
Crop Sprayer

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the operations shown in the Schedule, Paragraph (1)(d) of Exclusion f. of Section I – Coverage A – Bodily Injury And Property Damage Liability does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.